UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
RILEY CASSIDY and ZACHARY CROMWELL,

                                Plaintiffs,

          -against-

CITY OF NEW YORK, JOSEPH LEE and JOHN
or JANE DOE 1-10,

                               Defendants.
------------------------------------------------------------X

**COMPLAINT**

Demand for Trial by Jury

Docket No. 22-cv-9724

        Plaintiffs, Messrs. Riley Cassidy and Zachary Cromwell, by and through the undersigned

attorneys, Sim & DePaola LLP, for their complaint against the Defendants, City of New York,

Joseph Lee and John or Jane Doe 1-10, allege and state as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action, in which Plaintiffs seek relief vis-à-vis §§ 1981, 1983, 1985,

1986 and 1988, of Title 42 of the United States Code for the violations of their civil rights, as

guaranteed and protected by the First, Fourth, Fifth, Sixth and Fourteenth Amendments to the

Constitution of the United States, the constitution of the State of New York and the laws of the

City and State of New York.

2.      The following claims arise from an August 27, 2019, incident, in which defendants, acting

under color of state law, unlawfully stopped, searched, seized and detained Plaintiffs without a

valid judicially authorized arrest warrant, reasonable suspicion, probable cause or any other legal

justification to do so.

3.      As a result, Plaintiffs were maliciously prosecuted and denied their rights to Fair Trial and

Due Process, until the criminal proceedings were terminated in their favor on, or about, October

17, 2019, via the unconditional and summary dismissal of all adverse charges, upon consideration of the merits thereof, pursuant to Crim. P. Law § 160.50 or §160.60.

4.      Plaintiffs were therefore deprived of their liberty, their right to be free from unreasonable searches and seizures, as well as their right to Due Process and Equal Protection of the law.

5.      At all times here mentioned, defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

6.      Plaintiffs each served the City of New York with notice of the claims herein in compliance with GML § 50-E.

7.      At least thirty (30) days have elapsed since the service of said notice, and adjustment or payment thereof has been neglected or refused.

8.      Plaintiffs seek monetary damages (compensatory and punitive) against defendants, an award of costs and attorney's fees, and such other and further relief, as this Court may deem just and proper.

**JURISDICTION**

9.      This action arises under the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution, under §§ 1981, 1983, 1985, 1986 and 1988 of Title 42 of the United States Code, the constitution of the State of New York and by virtue of the laws of the City and State of New York. 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988. 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988.

10.     The jurisdiction of this Court is predicated upon §§ 1331, 1343(a)(3), 1343(a)(4), 1367(a) of Title 28 of the United States Code and the doctrine of supplemental jurisdiction. 28 U.S.C. §§ 1331, 1343(a)(3), 1343(a)(4) and 1367(a).

## VENUE

11.     Venue is laid within the Southern District of New York, in that Defendant City of New York is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. §§ 1391(b) and 1391(c).

## PARTIES

12.     Plaintiff, Mr. Riley Cassidy ("Mr. Cassidy"), presently resides in Brooklyn, New York.

13.     Plaintiff, Mr. Zachary Cromwell ("Mr. Cromwell"), presently resides in New York, New York.

14.     Defendant, City of New York ("City"), is a municipal corporation organized under the laws of the State of New York.

15.     At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel, including police officers, detectives, and supervisory officers as well as the individually named Defendants herein.

16.     In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

17.     Defendant, Joseph Lee ("Lee"), was, at all relevant times herein, a police officer or detective employed by the NYPD, under Tax Reg. No. 964112, and, as such, was acting in the capacity of an agent, servant and employee of the City of New York. Defendant Lee was, at all relevant times herein, believed to be assigned to the 9th Precinct of the NYPD. Defendant Lee is being sued in his individual and official capacities.

18.     At all relevant times, Defendants, John or Jane Doe 1-10 ("Doe 1-10"), were police officers, detectives, supervisors, policymakers or officials employed by the NYPD. At this time, Plaintiff is not privy to the true identities of defendants, Doe 1-10, as such knowledge is within the exclusive possession of defendants.

19.     At all relevant times herein, Defendants, Doe 1-10, were acting as agents, servants and employees of the City of New York, the NYPD. Defendants, Doe 1- 10, are being sued in their individual and official capacities.

20.     At all relevant times herein, Defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## FACTUAL CHARGES

21.     On August 27, 2019, at approximately 11:00 p.m., Plaintiffs were lawfully walking in the vicinity of 232 East 9th Street, New York, New York.

22.     Plaintiffs had not committed any crimes or violations of the law and had not been accused of such by any identified civilian witnesses.

23.     At said time and place, defendants, including Lee and Doe 1-10, approached Plaintiffs in an overtly aggressive and threatening manner with their arms outstretched menacingly toward Plaintiffs.

24.     Defendants, including Lee and Doe 1-10, then physically restrained Plaintiffs by violently contorting Plaintiffs' arms behind their backs before affixing metal handcuffs to each of their wrists in an excessively tight fashion.

25.     Plaintiffs both complained that the excessively tight handcuffs were causing them to suffer substantial physical pain and discomfort and repeatedly requested them to be loosened but their

complaints and requests were either ignored or outright denied by defendants, including Lee and Doe 1-10.

26.    Defendants, including Lee and Doe 1-10, then unlawfully searched and removed Plaintiffs to the 9th Precinct, as defendants were without any reasonable suspicion or probable cause to believe that either Plaintiff Cassidy or Plaintiff Cromwell had committed any crime or violation of the law.

27.    Defendants, including Lee and Doe 1-10, lacked any probable cause or reasonable suspicion to stop, seize or arrest Plaintiffs, because defendants never observed either Plaintiff commit any crime or violation of the law and were never informed of such.

28.    Defendants, including Lee and Doe 1-10, then proceeded to illegally search Plaintiffs' persons and possessions by rifling through clothing and pulling out their pockets, despite the clear lack of any indicia of secreted contraband or unlawful activity.

29.    As a result, Plaintiffs were involuntarily detained by defendants, including Lee and Doe 1-10, over the course of two (2) days, until their eventual release from custody on, or about, August 28, 2019.

30.    Defendants, including Lee and Doe 1-10, falsely accused Plaintiffs of Disorderly Conduct or other related charges, despite no actual evidence to support this unfounded allegation.

31.    Defendants, including Lee and Doe 1-10, fabricated fictitious events and occurrences, which were then falsely attributed to Plaintiffs, namely that Plaintiffs were observed to be engaging in fighting or in violent, tumultuous or threatening behavior with the intent public inconvenience, annoyance or alarm, when defendants knew such observations to be false and complete fabrications.

32.     Plaintiffs assert that defendants, including Lee and Doe 1-10, falsely arrested, wrongfully detained and maliciously prosecuted them with the full knowledge that Plaintiffs had committed no crimes or violations of the law.

33.     Plaintiffs, therefore, assert that due to the clear absence of any viable probable cause to warrant his criminal prosecution, at any point, they were denied their rights to Fair Trial and Due Process and were maliciously prosecuted from the moment defendants, including Lee and Doe 1-10, unlawfully stopped Plaintiffs, until the criminal proceedings were irrefutably terminated in favor of Plaintiffs on, or about, October 17, 2019, when all adverse charges were unconditionally and summarily dismissed and sealed, upon consideration of the merits thereof, pursuant to CPL § 160.50 or § 160.60.

34.     At all times relevant hereto, the defendants, including Lee and Doe 1-10, were involved in the decision to stop, seize, arrest and prosecute Plaintiffs without reasonable suspicion or probable cause, or failed to intervene when they observed others doing so in the absence of any reasonable suspicion or probable cause.

35.     At all times relevant hereto, the defendants, including Lee and Doe 1-10, subjected Plaintiffs to excessive force, or failed to intervene when they observed others subjecting Plaintiffs to excessive force.

36.     Plaintiffs assert that the aforementioned unlawful acts committed by defendants are representative of the City of New York's and NYPD's pervasive policy, custom or pattern and practice of falsely arresting individuals for refusing to provide identification or recording the activities of police officers.

37.     Defendants, including Lee and Doe 1-10, perpetrated multiple overt acts in furtherance of their obviously discriminatory inclinations against Plaintiffs, namely the stop, searches, assaults,

batteries, seizure, arrest, and malicious prosecution against Plaintiffs, despite the absence of any evidence to justify such conduct.

38.    Defendants, including Lee and Doe 1-10, possessed no valid reason to approach, stop, question, search or arrest Plaintiffs, which gives rise to the strong inference that such conduct resulted from the unjust motivations or proclivities and an animus against young white males harbored by defendants, including Lee and Doe 1-10.

39.    Defendants, including Lee and Doe 1-10, subjected Plaintiffs to disparate treatment compared to other individuals similarly situated, because defendants did not stop, accuse, seize or arrest any of the other multiple pedestrians, who were not young white adult males and who were engaged in activity identical to the kind that resulted in Plaintiffs' illegal search and seizure, namely lawfully walking outside in the vicinity of 232 East 9th Street, New York, New York on August 27, 2019, at approximately 11:00 p.m.

40.    Defendants, including Lee and Doe 1-10, engaged in a conspiracy to falsely arrest and maliciously prosecute Plaintiffs by personally conferring with each other, regarding the fabrication of the aforementioned nonexistent evidence the suppression of exculpatory evidence, as well the manner and means by which said fabrications would be forwarded to prosecutors.

41.    Plaintiffs assert that the defendants, including Lee and Doe 1-10, who violated their civil rights, are part of a larger pattern and practice of similar misconduct, which is so widespread, pervasive and consistent throughout the NYPD and the City of New York that the commission such constitutionally violative behavior has become tantamount to an official policy or custom within the NYPD and City of New York or, at the very least, conclusive evidence that the City and the NYPD have either tacitly approved of such egregious wrongdoings or that they have become

deliberately indifferent to the civil rights of those who may come into contact with their police officers.

42.    The individually named defendants herein, as well as other officers serving in the employ of the NYPD and City of New York, have blatantly, shamelessly, consistently and repeatedly engaged in conduct violative of the civil rights guaranteed and protected by Constitution of the United States, in addition to the laws and Constitution of the State of New York, all without incurring any ramifications for such misconduct and, ostensibly, with the full and complete blessing of the NYPD, the City of New York and their respective policymakers and supervisors.

43.    *The New York Times*, as well as numerous other reputable journalistic enterprises, have reported on the widespread corruption within the NYPD and City of New York, particularly the incredibly disconcerting proclivity of many NYPD officers to lie about subject matters that are materially relevant to criminal prosecutions, including the complete fabrication of arrest evidence and witnesses. Also detailed, is the NYPD's obstinate refusal to effectuate corrective or preventive measures to combat the inevitable recurrence of such misdeeds, and perhaps most troubling, the NYPD's alarming tendency to, instead, reward and promote these officers, including those who were inculpated via incontrovertible evidence, such as video evidence.

44.    The constitutionally repugnant behavior that persists within the ranks of the NYPD results from the NYPD's own policies, rules and procedures, namely the NYPD's incredibly flawed and illegal use of arrest quotas. Despite its illegality, such policies remain systemic throughout the NYPD and its individual commands. The NYPD, however, was not content in compelling its officers to effect as many arrests as possible, regardless of the presence of any legal right to do, it promulgated various subsets of quotas, which are predicated on race, color or ethnicity. Additionally, the NYPD, its supervisors or policymakers would assign varying point values to

arrests, which were, again, impermissibly based upon the arrestee's race, color or ethnicity. Unsurprisingly, officers would be better rewarded for minority arrests or summonses. This egregious conduct has reported by numerous respected media outlets and publications and has even formed the basis for federal lawsuits against the City and the NYPD, which were commenced by its own employee officers.

45.     On June 17, 2020, the *New York Daily News* published an article, by Graham Rayman, entitled "Brooklyn Cop Claims he was Punished for not Meeting Arrest Quotas, Refusing to Take Responsibility for Controversial Arrest in which he Wasn't Involved," describing allegations from an NYPD Police Officer, Terrence Dickerson, that he was retaliated against by the NYPD for refusing to adhere to mandatory racially based arrest quotas and for his refusal to accept responsibility for a controversial and publicized arrest via the excessive force, despite the fact that he was not even at the scene.

46.     Another article with a title that speaks for itself, also published by the *New York Daily News*, on December 5, 2019, and written by Graham Rayman, is entitled "Ex-Cop Details NYPD 'Collar Quotas'—Arrest Black and Hispanic Men, 'No Cuffs on Soft Targets' of Jews, Asians, Whites: Court Docs."

47.     *The New York Times*, on December 6, 2019, published an article by Joseph Goldstein and Ashley Southall, entitled "I Got Tired of Hunting Black and Hispanic People," which revealed a disturbing account from a different NYPD Police Officer, Anthony Diaz, describing a police force that measures the quality of police work by the quantity of minority arrests.

48.     On March 18, 2018, *The New York Times* published an explosive article, entitled "Promotions, Not Punishments for Officers Accused of Lying," written by Joseph Goldstein. Mr. Goldstein shines a light on the multitude of flaws within the CCRB and the NYPD, highlighting

the fact that the substantiation of a claim against an officer will invariably rely on the presence of incontrovertible proof against the officer. Due to the rarity availability of this type of evidence, an alarmingly small percentage of officer misconduct claims are substantiated. The CCRB is further handicapped by a terribly designed system that requires evidence of a virtually indisputable nature to substantiate any claim against an officer. The article also details the NYPD's persistent reluctance to investigate or discipline officers who lie and even posits that this reluctance is a significant cause of the lying pandemic within the NYPD. The article references various officers and detectives who were the subject of credible accusations relating to the officers' intentionally false statements, with some allegations coming from federal and state judges.

49.     On September 12, 2019, *The New York Times* published another article by Joseph Goldstein, entitled "Officers Said They Smelled Pot. The Judge Called Them Liars." Unsurprisingly, this article dealt with the unusually high frequency of officers using the odor of marijuana to excuse a search that conspicuously does not result in the recovery of any marijuana. It should not require an article in *The New York Times* to call attention to such patently disingenuous tactics, but has become necessary for a variety of reasons, including the NYPD's failure to correct such behavior, the willingness of prosecutors and judges to credit the lying officers and the increasing rate of occurrence.

50.     On April 24, 2019, *The New York Times* published an article, entitled "Detective's Lies Sent Three People to Prison, Prosecutors Charge," by Sean Piccolo, detailing the lies of NYPD Second Grade Detective Joseph Franco and how those lies resulted in the imprisonment of at least three innocent people. The article described how Det. Franco lied about observing drug transactions on at least three separate occasions, lies that were only uncovered through

contradictory video evidence. Det. Franco's lies resulted in the innocent individuals each being sentenced to prison terms in excess of one-year.

51.    Other articles include: (i) "Testilying' by Police: A Stubborn Problem.," by Joseph Goldstein, *The New York Times*, March 18, 2018; (ii) "New York Detective Charged with Faking Lineup Results," by Joseph Goldstein, *The New York Times*, February 17, 2018; (iii) "He Excelled as a Detective, Until Prosecutors Stopped Believing Him," by Joseph Goldstein, *The New York Times*, October 17, 2017; (iv) "Review Board Notes Rise in New York Police Officers' False Statement," by J. David Goodman, *The New York Times*, May 14, 2015; (v) "In Brooklyn Gun Cases, Suspicion Turns to the Police," by Stephanie Clifford, *The New York Times*, December 11, 2014; (vi) "Detective is Found Guilty of Planting Drugs," by Tim Stelloh, *The New York Times*, November 1, 2011; and (vii) "The Drugs? They Came from the Police," by Jim Dwyer, *The New York Times*, October 13, 2011.

52.    The NYPD has a longstanding and ignominious record of failing to discipline its officers, or even entertaining allegations of wrongdoing against them. On June 26, 2019, *The New York Times* published an article, entitled "2,495 Reports of Police Bias. Not One Was Deemed Valid by the N.Y.P.D." This article reported that within the last five (5) years, almost 2,500 separate individuals have filed formal complaints with the NYPD alleging that an officer acted with bias toward them, with not a single one being substantiated by the NYPD. Such a finding is plainly incredible and obviously the result of deliberately poor or nonexistent investigatory protocols. The report further impugned the NYPD's commitment to combat the prejudices and the biases exhibited by many of its officers.

53.    Upon information and belief, the NYPD, the City of New York, and their respective policymakers, officials or supervisors have imposed, tacitly approved or acquiesced to policies,

customs, or patterns and practices within the NYPD that resulted in Plaintiffs' arrests without probable cause.

54.     Upon information and belief, the NYPD, the City of New York, and their respective policymakers or supervisors have failed to provide adequate training regarding the identification of probable cause, reasonable suspicion or the appropriate amount of force to be used.

55.     Defendants' actions, pursuant to Plaintiffs' underlying arrests, which occurred without even the semblance of probable cause, were so blatantly violative of Plaintiffs' civil rights that the tacit approval of identical or similar acts by the policymakers or supervisors of the NYPD and the City of New York, as well as their deliberate indifference towards the rights of any individuals who may come into contact with defendants, should be inferred, because such flagrant deprivations of constitutionally protected rights could not and would not occur without the tacit approval or deliberate indifference regarding the commission of such violations by the policymakers or supervisors of the NYPD and City of New York.

56.     Upon information and belief, further details and facts, relating to the unlawful policies, customs or patterns and practices of the NYPD, City of New York and their respective policymakers, supervisors, police officers or employees, will become known after the completion of discovery, as such information is presently within the exclusive possession of defendants, the NYPD and City of New York.

57.     Upon information and belief, the personnel files, records and disciplinary histories of the officer defendants will reveal a history of Constitutional violations indicative of defendant City's knowledge that the individual officer defendants were unfit for employment as NYPD officers, or for employment in general, and that the probability of the individually named Defendants committing similar violations in the future was extremely high.

58.     Upon information and belief, said personnel files, records and disciplinary histories will conclusively show that the City and the NYPD were fully aware of defendants' past constitutional violations, the unacceptably high probability for the recurrence of similar transgressions, the unreasonably dangerous situations that were likely to result from their hiring or retention, as well as their unsuitability for employment as law enforcement officers, or for employment in general, and that the NYPD and City of New York failed to engage in any preventive or corrective action intended to diminish the likelihood of recurrence for such violations, which is tantamount to the City's tacit approval of such misconduct or the City's deliberate indifference towards the civil rights of those who may interact with its employees, including Lee and Doe 1-10.

59.     Upon information and belief, the individually named defendants have combined to be named as defendants in numerous lawsuits that have accused them of committing violations similar or identical to those alleged herein, all of which have resulted no disciplinary or corrective action of any kind.

60.     Upon information and belief, the NYPD and City of New York and have failed, or outright refused, to correct the individually named defendants' predilections to engage in unconstitutional behavior or attempt to prevent the recurrence of such misconduct

61.     The aforementioned acts of defendants, including the City of New York, Joseph Lee and John or Jane Doe 1-10, directly or proximately resulted in the deprivation or violation of Plaintiffs' civil rights, as enumerated and set forth by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, the constitution of the State of New York and the laws of the City and State of New York.

62.     As direct or proximate results of said acts, Plaintiffs were caused to suffer the loss of their liberty, irreparable reputational harm, substantial and permanent physical and psychological

injuries, as well as severe and permanent emotional distress, including fear, embarrassment, humiliation, traumatization, frustration, extreme inconvenience and anxiety.

## FIRST CAUSE OF ACTION
Unlawful Search & Seizure Under
New York State Law

63.     The above paragraphs are here incorporated by reference as though fully set forth.

64.     Defendants subjected Plaintiffs and their property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

65.     Plaintiffs were conscious and fully aware of the unreasonable searches and seizures to their persons and property.

66.     Plaintiffs did not consent to the unreasonable searches and seizures to their persons or property.

67.     The unreasonable searches and seizures to Plaintiffs' persons and property were not otherwise privileged.

68.     Accordingly, defendants violated Plaintiffs' rights to be free from unreasonable searches and seizures, pursuant to Art. I, § 12, of the New York constitution and Art. II, § 8, of the New York Civil Rights Law.

69.     Defendant City, as employer of the individual defendants, is responsible for their wrongdoings under the doctrine of *respondeat superior*.

70.     As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
Unlawful Search & Seizure Under
42 U.S.C. § 1983 Against Individual Defendants

71.     The above paragraphs are here incorporated by reference as though fully set forth.

72.     Defendants subjected Plaintiffs and their property to unreasonable searches and seizures without a valid warrant and without reasonable suspicion or probable cause do so.

73.     Plaintiffs were conscious and fully aware of the unreasonable searches and seizures to their persons and property.

74.     Plaintiffs did not consent to the unreasonable searches and seizures to their persons or property.

75.     The unreasonable searches and seizures to Plaintiffs' person and property were not otherwise privileged.

76.     Accordingly, defendants violated Plaintiffs' right to be free from unreasonable searches and seizures, pursuant to the Fourth Amendment to the Constitution of the United States.

77.     As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

### THIRD CAUSE OF ACTION
False Arrest & False Imprisonment Under
New York State Law

78.     The above paragraphs are here incorporated by reference as though fully set forth.

79.     Defendants subjected Plaintiffs to false arrest, false imprisonment, and deprivation of liberty without probable cause.

80.     Plaintiffs were conscious of their confinement.

81.     Plaintiffs did not consent to their confinement.

82.     Plaintiffs' arrest and false imprisonment was not otherwise privileged.

83.     Defendant City, as employer of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

84.     As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
False Arrest & False Imprisonment Under
42 U.S.C. § 1983 Against Individual Defendants

85.     The above paragraphs are here incorporated by reference as though fully set forth.

86.     Defendants violated the Fourth and Fourteenth Amendments to the Constitution of the United States by wrongfully and illegally arresting, detaining and imprisoning Plaintiffs.

87.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiffs was carried out without a valid warrant, without Plaintiffs' consent, and without probable cause or reasonable suspicion.

88.     At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiffs.

89.     As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## FIFTH CAUSE OF ACTION
Assault & Battery Under
New York State Law

90.     The above paragraphs are here incorporated by reference as though fully set forth.

91.     Defendants made Plaintiffs fear for their physical wellbeing and safety and placed them in apprehension of immediate harmful or offensive touching.

92.     Defendants engaged in and subjected Plaintiffs to immediate harmful or offensive touching and battered them without their consent.

93.     Defendant City, as employer of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

94.     As a direct and proximate result of this breach, Plaintiffs sustained the damages hereinbefore alleged.

### SIXTH CAUSE OF ACTION
Excessive Force Under
42 U.S.C. § 1983 Against Individual Defendants

95.     The above paragraphs are here incorporated by reference as though fully set forth.

96.     Defendants violated Plaintiffs' rights, under the Fourth and Fourteenth Amendments, because they used unreasonable force without Plaintiffs' consent.

97.     Defendants engaged in and subjected Plaintiffs to immediate harmful or offensive touching and battered them without their consent.

98.     As a direct and proximate result of this breach, Plaintiffs sustained the damages hereinbefore alleged.

### SEVENTH CAUSE OF ACTION
Malicious Prosecution Under
New York State Law

99.     The above paragraphs are here incorporated by reference as though fully set forth.

100.    Defendants initiated the prosecution against Plaintiffs.

101.    Defendants lacked probable cause to believe Plaintiffs were guilty or that the prosecutions would succeed.

102.    Defendants acted with malice, which may be inferred in the absence of probable cause.

103.    The prosecutions were terminated in Plaintiffs' favor, when all adverse charges were unconditionally and summarily dismissed and sealed, upon consideration of the merits thereof.

104.    Defendant City, as employer of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

105.    As a direct and proximate result of this breach, Plaintiffs sustained the damages hereinbefore alleged.

## EIGHTH CAUSE OF ACTION
Malicious Prosecution Under
42 U.S.C. § 1983 Against Individual Defendants

106.    The above paragraphs are here incorporated by reference as though fully set forth.

107.    Defendants initiated the prosecutions against Plaintiffs.

108.    Defendants lacked probable cause to believe Plaintiffs were guilty or that the prosecutions would succeed.

109.    Defendants acted with malice, which may be inferred in the absence of probable cause.

110.    The prosecutions were terminated in Plaintiffs' favors, when all adverse charges were unconditionally and summarily dismissed and sealed, upon consideration of the merits thereof.

111.    Accordingly, defendants violated Plaintiffs' Fourth and Fourteenth Amendment rights.

112.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## NINTH CAUSE OF ACTION
Denial of Right to Due Process Under
New York State Law

113.    The above paragraphs are here incorporated by reference as though fully set forth herein.

114.    Defendants fabricated false evidence to be used against Plaintiffs which was likely to influence a jury's decision.

115.    Defendants forwarded said false information to prosecutors.

116.    Defendants' actions resulted in post-arraignment deprivation to Plaintiffs' liberty and freedom of movement.

117.    Accordingly, defendants violated Plaintiffs' right to a Fair Trial, pursuant to Art. I, §§ 1, 2 and 6, of the New York constitution, and Art. II, § 12, of the New York State Civil Rights Law.

118.    Defendant City, as employer of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

119.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

### TENTH CAUSE OF ACTION
Denial of Rights to Fair Trial & Due Process Under
42 U.S.C. § 1983 Against Individual Defendants

120.    The above paragraphs are here incorporated by reference as though fully set forth.

121.    Defendants fabricated false evidence to be used against Plaintiffs which was likely to influence a jury's decision.

122.    Defendants forwarded said false information to prosecutors.

123.    Defendants' actions resulted in post-arraignment deprivations to Plaintiffs' liberty and freedom of movement.

124.    Accordingly, defendants violated Plaintiffs' rights, pursuant to the Fourth, Fifth and Fourteenth Amendments to Constitution of the United States.

125.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

### ELEVENTH CAUSE OF ACTION
Biased Based Profiling Under
New York City Law

126.    The above paragraphs are here incorporated by reference as though fully set forth herein.

127.    Defendants impermissibly relied upon Plaintiffs' actual or perceived race, color, national origin, ancestry, citizenship status, gender, religion, religious practice, age, disability or sexual

orientation, as the determinative factor in initiating law enforcement actions against Plaintiffs, rather than Plaintiffs' behavior or other information or circumstances that would link Plaintiffs to suspected unlawful activity.

128.    Accordingly, defendants violated Plaintiffs' rights, pursuant to § 14-151 of the Administrative Code of the City of New York.

129.    Defendant City, as employer of the individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

130.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## TWELFTH CAUSE OF ACTION
Deprivation of Rights & Denial of Equal Protection of the Laws Under
New York State law

131.    The above paragraphs are here incorporated by reference as though fully set forth herein.

132.    Defendants discriminated against Plaintiffs on the basis of race, color, national origin, ancestry, gender, religion, religious practice, age, disability or sexual orientation.

133.    Defendants also engaged in the selective treatment of Plaintiffs, in comparison to others similarly situated.

134.    Defendants' discriminatory treatment of Plaintiffs was based on impermissible considerations, such as race, color, ethnicity, an intent to inhibit or punish Plaintiffs for the exertion of his Constitutional rights, or a malicious or bad faith intent to injure Plaintiffs.

135.    Defendants applied facially neutral laws against Plaintiffs in a discriminatory manner.

136.    Defendants, motivated by discriminatory animus, applied facially neutral statutes with adverse effects against Plaintiffs.

137.    Defendants did not possess a rational basis, excuse or justification for applying any laws or

statutes against Plaintiffs.

138.    Accordingly, defendants violated Plaintiffs' rights, pursuant to Art. I, § 11, of the New York

constitution, Art. VII, § 79-N, of the New York Civil Rights Law and § 296, ¶ 13, of the New York

Executive Law.

139.    Defendant City, as employer of the individual defendants, is responsible for their

wrongdoing under the doctrine of *respondeat superior*.

140.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages

hereinbefore alleged.

### THIRTEENTH CAUSE OF ACTION
Deprivation of Rights & Denial of Equal Protection of the Laws Under
42 U.S.C. §§ 1981 & 1983 Against Individual Defendants

141.    The above paragraphs are here incorporated by reference as though fully set forth herein.

142.    Defendants discriminated against Plaintiffs on the basis of race, color or ethnicity.

143.    Defendants engaged in the selective treatment of Plaintiffs in comparison to others similarly

situated.

144.    Defendants' selective treatment of Plaintiffs were based on impermissible considerations,

such as race, color, ethnicity, an intent to inhibit or punish Plaintiffs for exercising their Constitutional

rights, or malicious or bad faith intent to injure Plaintiffs.

145.    Defendants applied facially neutral laws against Plaintiffs in a discriminatory manner.

146.    Defendants, motivated by a discriminatory animus, applied facially neutral penal statutes with

adverse effects against Plaintiffs.

147.    Defendants did not possess a rational basis, excuse or justification for applying any laws or

statutes against Plaintiffs.

148.    Accordingly, defendants violated Plaintiffs' rights, under the Fourteenth Amendment.

149.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages

hereinbefore alleged.

## FOURTEENTH CAUSE OF ACTION
Failure to Intervene Under
New York State Law

150.    The above paragraphs are here incorporated by reference as though fully set forth herein.

151.    Those defendants that were present but did not actively participate in the aforementioned

unlawful conduct, observed such conduct, had an opportunity to prevent such conduct, had a duty

to intervene and prevent such conduct, and failed to intervene.

152.    Defendant City, as employer of the individual defendants, is responsible for their

wrongdoing under the doctrine of *respondeat superior*.

153.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages

hereinbefore alleged.

## FIFTEENTH CAUSE OF ACTION
Failure to Intervene Under
42 U.S.C. § 1983 Against Individual Defendants

154.    The above paragraphs are here incorporated by reference as though fully set forth herein.

155.    Those defendants that were present but did not actively participate in the aforementioned

unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty

to intervene and prevent such conduct, and failed to intervene.

156.    Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, and

Fourteenth Amendments.

157.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages

hereinbefore alleged.

## SIXTEENTH CAUSE OF ACTION
Negligent Hiring, Training, Retention & Supervision Under

New York State Law

158.    The above paragraphs are here incorporated by reference as though fully set forth.

159.    Defendant City owed a duty of care to Plaintiffs to adequately hire, train, retain and supervise its employee defendants.

160.    Defendant City breached those duties of care.

161.    Defendant City placed defendants in a position where they could inflict foreseeable harm.

162.    Defendant City knew or should have known of its employee defendants' propensity for violating the individual rights granted under the United States Constitution and the laws of the State of New York, prior to the injuries incurred by Plaintiffs.

163.    Defendant City failed to take reasonable measures in hiring, training, retaining and supervising its employee defendants that would have prevented the aforesaid injuries to Plaintiffs.

164.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

## SEVENTEENTH CAUSE OF ACTION
Municipal "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant City

165.    The above paragraphs are here incorporated by reference as though fully set forth.

166.    Defendant City maintained a policy or custom that caused Plaintiffs to be deprived of his civil rights, tacitly approved of such violative conduct or was deliberately indifferent toward the potential exposure of individuals, such as Plaintiffs, to such violative behavior.

167.    Defendant City's employee police officers have engaged in an illegal pattern and practice of misconduct, so consistent and widespread that it constitutes a custom or usage, of which a supervisor or policymaker must have been aware of.

168.    Defendant City and its policymakers failed to provide adequate training or supervision to their subordinates to such an extent that is tantamount to a deliberate indifference toward the rights of those who may come into contact with Defendant City's employees.

169.    Defendant City's employees engaged in such egregious and flagrant violations of Plaintiff's Constitutional rights that the need for enhanced training or supervision is obvious and equates to a display of deliberate indifference by Defendant City and its policymakers toward the rights of individuals, who may come into contact with Defendant City's employees.

170.    Defendant City's repeated refusal or failure to install or apply corrective or preventive measures constitutes the tacit approval of such violative behavior or a deliberate indifference to the rights of those who may be affected by such behavior.

171.    Defendant City's conduct caused the violation of Plaintiffs' civil rights, pursuant to Constitution of the United States.

172.    As a direct and proximate result of this unlawful conduct, Plaintiffs sustained the damages hereinbefore alleged.

**WHEREFORE**, Plaintiffs respectfully request judgment against Defendants, jointly and severally, as follows:

a)    In favor of Plaintiffs in an amount to be determined by a jury for each of Plaintiffs' causes of action;

b)    Awarding Plaintiffs punitive damages in an amount to be determined by a jury;

c)    Awarding Plaintiffs compensatory damages in an amount to be determined by a jury;

d)    Awarding Plaintiffs reasonable attorney's fees and costs, pursuant to § 1988 of Title 42 of the United States Code; the New York Civil Rights and Executive Laws; in addition to the Administrative Code of the City of New York;

e)      Together with such other and further relief, as this Court may deem just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

Dated: Bayside, New York
        November 15, 2022

SIM & DEPAOLA LLP
*Attorneys-at-Law*
42-40 Bell Boulevard – Suite 405
Bayside, New York 11361
Tel: (718) 281-0400
Fax: (718) 631-2700

By:      _____
         Samuel C. DePaola, Esq.
         Bar No. SD0622
         *Attorney for Plaintiffs*
         sdepaola@simdepaola.com